UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.P., a minor, by and through his guardian and guardian ad litem, Yamin B., <br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>BELLA MENTE MONTESSORI ACADEMY,<br><br>　　　　　　　　　　　　Defendant. | Case No.: 3:23-cv-01166-LL-AHG<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING PETITION FOR APPROVAL OF MINOR'S COMPROMISE**<br><br>[ECF No. 1] |

Before the Court is the Complaint and Petition for Approval of Minor's Compromise filed by minor Plaintiff L.P. ("Plaintiff"), by and through his guardian *ad litem* Yamin B., seeking Court approval of the settlement of Plaintiff's putative claims against Defendant Bella Mente Montessori Academy. ECF No. 1. This Report and Recommendation is submitted to United States District Judge Linda Lopez pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 17.1 of the United States District Court for the Southern District of California. After reviewing the Petition and all supporting documents, and for the reasons discussed below, the undersigned **RECOMMENDS** that the Court **GRANT** the Petition.

I.   BACKGROUND

Plaintiff L.P. is a minor appearing by and through his mother and court-appointed guardian *ad litem*, Yamin B. ECF No. 11. Plaintiff initiated this action by filing the instant Complaint and Petition for Approval of Minor's Compromise on June 23, 2023. ECF No. 1.[1] Plaintiff's putative claims stem from L.P.'s suspension and subsequent expulsion from the school he attended during the 2022-2023 school year, Bella Mente Montessori Academy ("BMMA"), which resulted in administrative proceedings before the Office of Administrative Hearings ("OAH") and, ultimately, pre-litigation settlement. *Id.* at 3.

A.   **Plaintiff's Putative Claims**

The following factual allegations are taken from Plaintiff's Complaint and are taken as true only to the extent the Court must consider the nature of Plaintiff's claims to evaluate the fairness of the settlement.

In August 2022, thirteen-year-old Plaintiff L.P. began attending BMMA, a public charter located within the boundaries of Vista Unified School District. ECF No. 1 at 2. As a disabled student, L.P. qualified for an individualized education program ("IEP") at

---

[1] As noted in the Petition, although the parties reached a pre-litigation settlement and legal proceedings were thus never commenced in this Court regarding the underlying dispute, since Plaintiff's putative claims arise under federal law, it is appropriate for the Court to construe the parties' case-initiating filing as **both** a complaint and a petition for approval of minor's compromise. *P.R. v. Fresno Unified Sch. Dist.*, No. 1:19-cv-00220-DAD-BAM, 2019 U.S. Dist. LEXIS 46346, at *2 (E.D. Cal. Mar. 20, 2019).

BMMA under the primary eligibility category of Other Health Impairment ("OHI"), due to his Attention-Deficit Hyperactivity Disorder ("ADHD") and secondary eligibility of Specific Learning Disability ("SLD"). *Id.*

On or around October 17, 2022, BMMA suspended and subsequently expelled L.P. for violating the student code of conduct. *Id.* at 3. L.P. allegedly made terroristic threats to commit a school shooting targeting specific individuals during a two-week period. *Id.* On November 7, 2022, BMMA convened a manifestation determination review meeting pursuant to the Individuals with Disabilities Education Act ("IDEA"). *See* 20 U.S.C. § 1415(k)(1)(E); 34 C.F.R. § 300.530(e)(1) (requiring that, within 10 school days of any decision to change the placement of a child with a disability because of a violation of a code of student conduct, the school, parent, and relevant members of the child's IEP team must review all relevant information in the student's file and other information to determine if the conduct in question was caused by, or had a direct and substantial relationship to, the child's disability, or if the conduct was the direct result of the school's failure to implement the IEP). Prior to the meeting, a BMMA school psychologist prepared a draft manifestation determination report, which concluded that L.P.'s behaviors were not caused by and did not have a direct or substantial relationship to L.P.'s disability and were not the result of BMMA's failure to implement his IEP. *See* ECF No. 1-2 at 13-17. After the meeting, the BMMA members of the manifestation determination review team made no changes to the draft report and reached the same conclusion. *Id.* at 20-21. BMMA held an expulsion hearing on December 2, 2022, and expelled L.P. on December 5, 2022. *Id.* Based on the suspension and expulsion, Plaintiff alleges that BMMA denied him a free appropriate public education ("FAPE"), as required under IDEA, from October 17, 2022, until the end of the winter term. ECF No. 1 at 3; *see also* 20 U.S.C. § 1412(a)(1); 34 CFR § 300.101.

Plaintiff filed an administrative complaint and due process hearing request against Defendant BMMA on November 23, 2022. ECF No. 1 at 3. The Office of Administrative Hearings convened the hearing on January 10, 11, 12, 17, and 28, 2023 before an Administrative Law Judge ("ALJ"). On January 31, 2023, the ALJ issued an expedited

decision in Plaintiff's favor. *See* ECF No. 1-2, OAH Decision. The ALJ held that BMMA failed to comply with the IDEA because, since the BMMA manifestation determination review team relied entirely on the pre-written draft report prepared by the school psychologist, BMMA had "predetermined the outcome of the November 7, 2022, manifestation determination meeting, failed to follow IDEA procedures, and denied [L.P.'s parents] meaningful participation in the manifestation determination process required for a disciplinary change of [L.P.'s] placement." *Id.* at 29. The ALJ ordered that BMMA conduct a new manifestation determination review meeting for L.P., complying with all IDEA procedures, within 45 days of the order. *Id.* at 30-31.

On or around March 17, 2023, L.P.'s parent, through her counsel, notified BMMA of her intention to pursue civil and administrative claims and damages in federal court on behalf of L.P. for alleged violations of IDEA, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, the Americans with Disabilities Act, and additional causes of action for race and disability discrimination and negligent and intentional infliction of emotional distress. ECF No. 1 at 5. L.P. also intended to bring a constitutional due process claim against BMMA and planned to seek injunctive relief to overturn the alleged unlawful expulsion. *Id.*

After extensive negotiations, the parties eventually entered into a series of two settlement agreements to settle all claims. *Id.* The first settlement agreement, which is now before this Court, ("the Agreement"), settles any and all civil actions, resolving all of Plaintiff's putative claims for monetary damages under federal and state law, and is contingent upon the Court's approval of the minor's compromise. *See* ECF No. 1 at 5; *see also* ECF No. 1-3, Compl. Ex. B: Settlement and General Release.[2] The BMMA board approved the Agreement on April 20, 2023. *See* ECF No. 1 at 5-6.

---

[2] The second settlement agreement applies to educational claims under the jurisdiction of the Office of Administrative Hearings. *See id.* at 6; *see also* ECF No. 1-4, Compl. Ex. C, Education Settlement and General Release. The second agreement is not contingent on Court approval and is not before the Court.

### B. Terms of Settlement

The Agreement fully resolves all known and unknown claims arising from or related to L.P.'s educational program from August 2022 to December 2022, in exchange for the following settlement terms:

- BMMA will pay Plaintiff's guardian ad litem damages in the amount of $35,000, subject to and payable consistent with this Court's approval of the minor's compromise.
- BMMA will reimburse Plaintiff's attorney fees in the amount of $10,000.

ECF No. 1 at 6.

## II. LEGAL STANDARD

It is well-settled that courts have a special duty to safeguard the interests of litigants who are minors in the context of settlements proposed in civil suits. *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011); *see also* Fed. R. Civ. P. 17(c) (district courts "must appoint a guardian *ad litem*—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action"). This evaluation requires the Court to determine if the settlement is in the best interests of the minor, by considering not only the fairness of the settlement, but the structure and manner of the plan for the payment and distribution of the assets for the benefit of the minor. "In the context of proposed settlements in suits involving minor plaintiffs, this special duty requires a district court to 'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.'" *Robidoux*, 638 F.3d at 1181 (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)); *see also Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983) (holding that "a court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian *ad litem*").

To facilitate courts within this district fulfilling the duty to safeguard the interests of minor plaintiffs, the Local Rules provide that "[n]o action by or on behalf of a minor or

incompetent will be settled, compromised, voluntarily discontinued, dismissed or terminated without court order or judgment." CivLR 17.1 To that end, parties must submit any settlement of a minor's claims to a magistrate judge for preliminary review of the structural components of the agreement. *See* CivLR 17(a) ("All settlements and compromises must be reviewed by a magistrate judge before any order of approval shall issue."). In making this evaluation, the Court must apply the state probate code, even where the settlement involves claims arising under federal law. *See* CivLR 17.1(b)(1) ("Money or property recovered by a minor or incompetent California resident by settlement or judgement must be paid and disbursed in accordance with California Probate Code § 3600, *et seq.*").

      The Ninth Circuit has established that courts reviewing the settlement of a minor's federal claim should "limit the scope of their review to the question whether the net amount distributed to each minor in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." *Robidoux*, 638 F.3d at 1181–82. They should also "evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel—whose interests the district court has no special duty to safeguard." *Id.* at 1182 (citing *Dacanay*, 573 F.2d at 1078). "So long as the net recovery to each minor plaintiff is fair and reasonable in light of their claims and average recovery in similar cases, the district court should approve the settlement as proposed by the parties." *Robidoux*, 638 F.3d at 1182.

      Significantly, the Ninth Circuit limited its decision in *Robidoux* to "cases involving the settlement of a minor's ***federal*** claims." *Id.* at 1181–82 (emphasis added). Where a settlement involves state law claims, federal courts are generally guided by state law rather than the *Robidoux* framework. *J.T. by & Through Wolfe v. Tehachapi Unified Sch. Dist.*, No. 116-CV-01492-DAD-JLT, 2019 WL 954783, at *2 (E.D. Cal. Feb. 27, 2019). *See also A.M.L. v. Cernaianu*, No. LA CV12-06082 JAK (RZx), 2014 WL 12588992, at *3 (C.D. Cal. Apr. 1, 2014) (collecting cases). The *A.M.L.* court noted that, although federal courts

generally require claims by minors to "be settled in accordance with applicable state law," the Ninth Circuit in *Robidoux* held such an approach "places undue emphasis on the amount of attorney's fees provided for in a settlement, instead of focusing on the net recovery of the minor plaintiffs." No. LA CV12-06082 JAK (RZx), 2014 WL 12588992, at *2 (quoting *Robidoux*, 638 F.3d at 1181) (other citation omitted). *But see Mitchell v. Riverstone Residential Grp.*, No. CIV. S-11-2202 LKK, 2013 WL 1680641, at *1 (E.D. Cal. Apr. 17, 2013) ("[A] number of district courts have applied the rule provided in *Robidoux* to evaluate the propriety of a settlement of a minor's state law claims as well") (collecting cases).

Just like federal claims, a minor's settlement of state law claims must also be approved by the Court, under the same applicable statutory scheme for approval of a minor's compromise set forth in the California Probate Code. *See* Cal. Prob. Code §§ 3601 *et seq*. Under California law, the Court is tasked with evaluating the reasonableness of the settlement and determining whether the compromise is in the best interest of the minor. *A.M.L.*, 2014 WL 12588992, at *3 (citations omitted). In carrying out that task, the Court is afforded "broad power . . . to authorize payment from the settlement—to say who and what will be paid from the minor's money—as well as direct certain individuals to pay it." *Goldberg v. Super. Ct.*, 23 Cal. App. 4th 1378, 1382 (Cal. Ct. App. 1994). *See also Pearson v. Super. Ct.*, 136 Cal. Rptr. 3d 455, 459 (Cal. Ct. App. 2012) (explaining that the purpose of requiring court approval of a minor's settlement is to "allow[] the guardians of a minor to effectively negotiate a settlement while at the same time protect[ing] the minor's interest by requiring court approval before the settlement can have a binding effect on the minor").

Here, Plaintiff's putative damages claims arise under both federal and state law. Therefore, the Court will review the settlement with an eye towards both the state law standard, which focuses on the "best interests of the minor," as well as the *Robidoux* standard, which focuses on whether the net amount distributed to the minor plaintiff (without regard to the proportion of the settlement allocated to adult co-plaintiffs or attorney fees) is "fair and reasonable." *See A.M.L.*, 2014 WL 12588992 at *3 (finding it

7

3:23-cv-01166-LL-AHG

unnecessary for the court to resolve whether *Robidoux* or state rules applied to approval of minor's compromise in case involving state law tort claims, because the proposed settlement would satisfy both standards). For the reasons explained below, the Court finds the settlement should survive scrutiny under both standards.

## III.   DISCUSSION

As mentioned above, the parties engaged in extensive negotiations before they eventually entered into a series of two settlement agreements to settle all claims, and the first settlement agreement is now before this Court for approval. ECF No. 1 at 5. To determine whether the agreement is fair, reasonable, and in the best interests of L.P., the Court will analyze the proposed net settlement amount for Plaintiff, the method of disbursing Plaintiff's net recovery, and the proposed attorney fees and costs.

### A.   Proposed Net Settlement Amount for Plaintiff

In reviewing a petition to approve a minor's compromise, "courts typically consider such information as the relative worth of the settlement amount, the circumstances of the settlement, counsel's explanation of their views and experiences in litigating these types of actions, and other, similar compromises that have been approved by courts." *J.T.*, 2019 WL 954783, at *2. As discussed above, under the federal standard, the Court's inquiry should take into account "whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claims, and recovery in similar cases." *Robidoux*, 638 F.3d at 1181-82. Taking all relevant considerations into account, the Court finds that the proposed net recovery of $35,000 for Minor L.P. is fair, reasonable, and in Plaintiff's best interests, considering the facts and circumstances of this action.

The Court has performed its own review of cases involving facts similar to those at issue here and finds the net recovery amount to be reasonable and fair. In fact, Plaintiff's net recovery of $35,000 exceeds the typical amount recovered by other minors in similar circumstances or actions. *See, e.g.*, *Stanley v. Bellflower Unified Sch. Dist.*, 2022 U.S. Dist. LEXIS 142039, at *2 (C.D. Cal. Jul. 1, 2022) (approving a total gross settlement amount

of $30,000 and a net settlement amount of $22,245.75 for a minor plaintiff bringing claims under the IDEA and ADA against his school district for denying him disability services); *T.L. v. So. Kern Unified Sch. Dist.*, 2019 WL 3072583, at *3 (E.D. Cal. Jul. 15, 2019) (approving a net recovery of $24,750 to the minor plaintiff in an IDEA case where a disabled student was suspended and recommended for expulsion due to disability-related behaviors); *V.A. v. Montebello Unified Sch. Dist.*, No. LACV1904645JAKKSX, 2020 U.S. Dist. LEXIS 260202, at *2 (C.D. Cal. Sept. 17, 2020) (approving a gross settlement amount of $36,000 and a net settlement amount of $30,000, to be placed in a blocked account for the benefit of the minor plaintiff, where the plaintiff alleged violations of the ADA against his school district); *Colbey T. v. Mt. Diablo Unified Sch. Dist.*, No. C 11-03108 LB, 2012 U.S. Dist. LEXIS 62930, at *1–2 (N.D. Cal. May 4, 2012) (approving a minor's compromise of civil rights, ADA, and Rehabilitation Act claims for $29,000, and allocating $28,650 to be held in a trust account for the minor plaintiff's counseling, therapy, educational, and other expenses, where the minor plaintiff alleged the school district exacerbated his emotional and behavioral disabilities rather than accommodating them).

Based upon these recoveries in similar actions, consideration of the facts, and the risks associated with pursuing Plaintiff's claims through litigation, the Court concludes the proposed net settlement amount of $35,000 for Plaintiff is fair and reasonable under both state and federal law standards.

### B.     Proposed Method of Disbursement

Under the California Probate Code, various alternative methods are available for disbursement of the funds of a settlement of a minor. *See* Cal. Prob. Code §§ 3600 *et. seq.* Here, the net amount payable to L.P. is $35,000. L.P.'s guardian *ad litem* Yamin B. proposes that the net settlement amount be placed in an account pursuant to the California Uniform Transfers to Minors Act ("CUTMA"), with Yamin B. serving as custodian of the account and L.P. as the beneficiary of the account. *See* Cal. Prob. Code §§ 3900 *et seq*; *see also* ECF No. 1-5, Decl. of Yamin B. Plaintiff's proposed distribution method is in line with Section 3611(f) of the California Probate Code, which provides that "money . . . to be

paid or delivered for the benefit of the minor" may "be transferred to a custodian for the benefit of the minor under [CUTMA], Part 9 (commencing with Section 3900)."

Yamin B. has opened a CUTMA account for L.P. at San Diego County Credit Union. ECF No. 1 at 7; *see also* ECF No. 1-5, Yamin B. Decl. ¶ 5. Accordingly, Plaintiff requests that the Court issue an order for Defendant to distribute $35,000 by check made payable to "Yamin B. as custodian for L.P. under the California Uniform Transfers to Minors Act." ECF No. 1 at 7. Under the CUTMA, the funds will remain in the account until L.P. reaches the age of 18, the custodian will have fiduciary responsibilities over the account and be required to keep it separate, and when L.P. reaches the age of 18, the custodian of the account will be required to pay the funds to L.P. *Id.*

The Court finds that the guardian *ad litem*'s proposed method of disbursement of Plaintiff's net settlement proceeds is fair, reasonable, and compliant with the relevant California Probate Code governing approval of minor's compromises and CUTMA. *See* §§ 3611(f), 3904, 3909(a), 3920. Accordingly, the undersigned will recommend that the Court approve the proposed distribution of the minor's net settlement proceeds set forth in the petition.

### C.    Proposed Attorney Fees and Costs

Attorney fees and costs are typically controlled by statute, local rule, or local custom. *Napier v. San Diego Cty.*, 2017 U.S. Dist. LEXIS 196223, at *9 (S.D. Cal Nov. 28, 2017). Generally, fees in minors' cases have historically been limited to 25% of the gross recovery. *See, e.g., DeRuyver v. Omni La Costa Resort & Spa, LLC,* No. 3:17-CV-0516-H-AGS, 2020 WL 563551, at *2 (S.D. Cal. Feb. 4, 2020); *McCue v. South Fork Union Sch. Dist.,* NO. 1:10-cv-00233-LJO-MJS, 2012 WL 2995666, at *2 (E.D. Cal. Jul. 23, 2012); *Welch v. Cty. of Sacramento*, No. 2:07-cv-00794-GEB-EFB, 2008 WL 3285412, at *1 (E.D. Cal. Aug. 5, 2008); *Red v. Merced Cty.*, No. 1:06-cv-01003-GSA, 2008 WL 1849796, at *2 (E.D. Cal. Apr. 23, 2008). In California, courts are required to approve the attorney fees to be paid for representation of a minor. *See* Cal. Prob. Code § 2601; Cal. Rule of Ct. 7.955. To determine whether the fee is reasonable, courts consider a myriad of

factors including: the amount of the fee in proportion to the value of the services performed; the novelty and difficulty of the questions involved, and skills required; the amount involved and the results obtained; and the experience and ability of the attorney. In instances where a contingency fee has been proposed, "most courts require a showing of good cause to award more than 25% of any recovery" whereas a greater reward is "rare and justified only when counsel proves that he or she provided extraordinary services." *Schwall v. Meadow Wood Apts.*, No. CIV. S-07-0014 LKK, 2008 WL 552432, at *1-*2 (E.D. Cal. Feb. 27, 2008) (internal quotation marks omitted).

Plaintiff requests that BMMA reimburse Plaintiff's attorney fees in the amount of $10,000.00, a sum that represents 22.22% of the gross settlement proceeds. ECF No. 1 at 6.

The Court finds Plaintiff's request for attorney fees to be permitted under the usual historical limits. *See* 28 U.S.C. § 2678; *Napier v. San Diego*, No. 15-cv-581-CAB-KSC, 2017 WL 5759803, at *9 (S.D. Cal. No. 20, 2017). Given the specialization required to represent a minor in an IDEA case, the time needed for counsel to familiarize themselves with the case, the positive result before the ALJ, the time spent negotiating the two settlement agreements, the time spent preparing this petition for review, and the fee request's adherence to the historically applied limit in cases involving minors, the undersigned will recommend the Court find that the requested allocation of the settlement funds towards attorney fees and costs is reasonable.

## IV. CONCLUSION

For the reasons discussed above, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) adopting this Report and Recommendation; and (2) **GRANTING** the Petition for Approval of Minor's Compromise (ECF No. 1).

**IT IS ORDERED** that, pursuant to 28 U.S.C. § 636(b)(1)(C), any party to this action may file written objections with the Court and serve a copy on all parties no later than **August 15, 2023**. The document should be captions "Objections to Report and Recommendation." If objections are filed, any reply is due by **August 22, 2023**.

Although the federal statutory scheme provides for a 14-day objections period to a Magistrate Judge's Report and Recommendation, the undersigned notes that the Petition in this case is apparently unopposed. *See* ECF No. 13. Therefore, **if all parties wish to waive the objections period, they should file a joint stipulation to that effect immediately**, to allow the Court to adopt this Report and Recommendation without further delay. However, there shall be no adverse consequences to any party who files objections or otherwise chooses not to waive the objections period.

Dated: August 1, 2023

_____
Honorable Allison H. Goddard
United States Magistrate Judge